1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10  JOSHUA J. TRUEBLOOD,

11              Plaintiff,

12      v.

13  OFFICER SGT. CAPPOLA, *et al.*,

14              Defendants.

CASE NO. 3:19-cv-05816-RAJ-JRC

REPORT AND RECOMMENDATION

NOTED FOR: October 23, 2020

15      The District Court has referred this 42 U.S.C. § 1983 civil rights action to the

16  undersigned.  *See* Dkt.  Plaintiff is proceeding *pro se* and is incarcerated.  Plaintiff initiated this

17  matter after a toilet overflow allegedly soaked his shoes with human waste and prison staff

18  refused to provide him with new shoes for two weeks.  Plaintiff alleges that he later learned that

19  he had been exposed to Hepatitis C and brings claims of deliberate indifference against two

20  corrections officers and a sergeant who, he claims, denied his requests for new shoes.

21      Defendants now move for summary judgment.  They correctly argue that claims against

22  the two corrections officers—defendants Brandon Jennings and Jose DeLeon—fail because there

23  is no evidence from which a jury could find that the officers acted with deliberate indifference.

24

1  However, defendants' arguments for dismissal of the claims against the sergeant, defendant John

2  Coppola, fail.  Contrary to defendants' arguments, plaintiff exhausted these claims by requesting

3  new shoes, then filing suit after he was told he would receive them.  And defendant Coppola's

4  and plaintiff's varying accounts of events create genuine issues of material fact regarding

5  whether defendant Coppola was deliberately indifferent.  Further, qualified immunity does not

6  apply because, among other things, there is a clearly established right to be free of exposure to

7  human waste for a prolonged period.

8      The summary judgment motion should be granted in part and denied in part.  The District

9  Court should also appoint *pro bono* counsel.

10                              **BACKGROUND**

11     **I. Plaintiff's Allegations**

12     Plaintiff, who is currently housed at Larch Corrections Center ("LCC"), initiated this

13  matter in September 2019.  *See* Dkt. 1.  Plaintiff's amended complaint is signed under penalty of

14  perjury.  Dkt. 9, at 13.  Therefore, his amended complaint's allegations are considered as

15  evidence in opposition to summary judgment, inasmuch as the allegations are based on personal

16  knowledge and set forth facts that would be admissible in evidence.  *Jones v. Blanas*, 393 F.3d

17  918, 923 (9th Cir. 2004).

18     The amended complaint sets forth the following account of events.  On August 13, 2019,

19  plaintiff was in his cell at the Washington Corrections Center ("WCC") when his toilet

20  overflowed, "sending human waste, bloodborn pathogens, and urine all over" his floor,

21  eventually rising to a depth of two inches.  Dkt. 9, at 4.  While attempting to move his

22  belongings from the ground, plaintiff's shoes became "soaked with this contaminated water."

23  Dkt. 9, at 5.  Plaintiff claims he remained in his cell for approximately 30 minutes.  Dkt. 9, at 6.

24

Afterward, plaintiff states that he and another prisoner asked defendant Jennings to give them "new or different shoes" since their shoes were "soaked with contaminated water & human waste[.]"  Dkt. 9, at 6.  However, defendant Jennings allegedly said "'don[']t ask me, it[']s not my f[******] problem.'"  Dkt. 9, at 6.  Plaintiff states that they then asked defendant DeLeon, who said that "he couldn[']t do anything about it and told us to go ask [defendant] Cappola."  Dkt. 9, at 6.  It is not disputed that defendant Cappola was the supervising sergeant in charge of plaintiff's unit.  *See* Dkt. 64, at 1.

Plaintiff alleges that he asked defendant Cappola for shoes and told defendant Cappola that plaintiff had "cuts under my toes" that made him fear becoming ill from the exposure to sewage water.  Dkt 9, at 7.  Plaintiff states that defendant Cappola said "to check back with him . . . two days later"; but two days later, defendant Cappola allegedly told plaintiff that Cappola "[did not] have access to the shoes."  Dkt. 9, at 7–8.  Plaintiff claims that defendant Cappola then told him to "spray some . . . cleaner" on his feet and that in response multiple requests to defendants for new shoes, defendants ignored plaintiff or told him to "quit asking."  Dkt. 9, at 8.

Plaintiff believes that he has contracted Hepatitis C as a result of having to wear sewage-contaminated shoes for two weeks.  Dkt. 9, at 10.

**II.  Other Documents that Plaintiff Has Filed**

Plaintiff has filed an August 30, 2019, request for "blood work" and his lab results, which state that plaintiff is positive for "ANTI-HCV" and that a "true positive . . . is consistent with current or past hepatitis C infection."  Dkt. 8, at 2–3.  Plaintiff has also filed a declaration from another Washington Corrections Center prisoner, who states that he observed "the flooding of human waste and raw sewage" into plaintiff's cell.  Dkt. 45, at 1.  Further, plaintiff's former cellmate has written a letter stating that their cell filled with dirty toilet water and that his and

1    plaintiff's shoes were "soaked" during clean up.  Dkt. 59, at 2.  Plaintiff's cellmate states that he

2    and plaintiff requested new shoes and socks but that their requests were denied.  Dkt. 59, at 2.

3    **III.  Defendants' Summary Judgment Motion**

4      With their summary judgment motion, defendants filed a notice of dispositive motion.  *See*

5    Dkt. 70.  In support of the summary judgment motion, defendants rely on their own declarations

6    (Dkts. 64, 65, 67) as well as declarations from a grievance coordinator at Larch Corrections

7    Center, James Hutchinson (Dkt. 66); a clerical worker with the grievance program, Jordan

8    McKinney (Dkt. 68); and a physician's assistant at the Cedar Creek Corrections Center, Kelly

9    Remy PA-C.  Dkt. 69.

10     For their part, defendants assert that the toilet overflow was only a "small amount" of

11   water, that two inches of water in the cell was "not possible," and that plaintiff was not in his cell

12   for 30 minutes, as he claimed.   Dkt. 67, at 2.  Defendant Coppola asserts that a toilet overflow

13   could not result in "matter entering the toilet that originated in another inmate's cell" due to the

14   design of the plumbing system.  Dkt. 64, at 3.

15     Defendants DeLeon states that plaintiff did not ask him "repeatedly" for shoes as plaintiff

16   claims.  Dkt. 65, at 2.  Defendant Jennings states that he "do[es] not recall" plaintiff or any other

17   person asking him about shoes and that he "would not tell an inmate that it's not my problem."

18   Dkt. 67, at 2.

19     Defendant Coppola states that he processed requests for shoes but that he "do[es] not

20   recall a conversation with [plaintiff]" and that "[i]f a conversation did occur," he would not have

21   denied the request as plaintiff claims.  Dkt. 64, at 2.  According to defendant Coppola, "[i]f an

22   inmate had requested new shoes because they got soaked f[ro]m a toilet overflow, I would have

23   had a porter deliver new shoes[.]"  Dkt. 64, at 3.  Further, regarding plaintiff's claim that

24

Coppola denied him shoes again two days after the overflow, Coppola denies telling plaintiff to spray cleaner on his feet and refusing to help him. Dkt. 64, at 2. Coppola states that "it is possible that I talked to [plaintiff]" but does not recall a conversation. Dkt. 64, at 3.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if a moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a given fact is determined by the required elements of the substantive law under which the claims are brought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes that do not affect the outcome of the suit under the governing law will not be considered. *Id.*

Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). However, when presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro se complaint will be liberally construed. . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion must do more than simply show that there is some metaphysical doubt as to the

1  material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  The

2  opposing party cannot rest solely on his pleadings but must produce significant, probative

3  evidence in the form of affidavits, and/or admissible discovery material that would allow a

4  reasonable jury to find in his favor.  *Id.* at n.11; *Anderson*, 477 U.S. at 249–50.  However,

5  weighing of evidence and drawing legitimate inferences from facts are jury functions, and not

6  the function of the court.  *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d

7  1539, 1542 (9th Cir. 1989).  And if the moving party has not met its burden on summary

8  judgment, the Court will not grant the motion—even if there is no opposition to the motion.  *See*

9  *Henry v. Gill Inds.*, 983 F.2d 943, 950 (9th Cir. 1993) ("Summary judgment may be resisted and

10  must be denied on no other grounds than that the movant has failed to meet its burden of

11  demonstrating the absence of triable issues.").

12  **II. Defendant's Arguments**

13  **A. Exhaustion**

14  Defendants argue that plaintiff failed to exhaust his administrative remedies before

15  bringing this lawsuit so that the complaint should be dismissed.  *See* Dkt. 63, at 10–11.

16  Defendants are incorrect.

17  **1. Legal Principles**

18  "No action shall be brought with respect to prison conditions under section 1983 of this

19  title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

20  facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

21  In *Albino v. Baca*, 747 F.3d 1162, 1168–70 (9th Cir. 2014), the Ninth Circuit held that the

22  proper procedure to challenge a failure to exhaust administrative remedies is a motion for

23  summary judgment, noting that the issue of "[e]xhaustion should be decided, if feasible, before

24

1   reaching the merits of a prisoner's claim." Under *Albino*, "a defendant must first prove that there

2   was an available administrative remedy and that the prisoner did not exhaust that available

3   remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).

4        A burden of production then shifts to plaintiff to submit evidence that the remedies were

5   made effectively unavailable to him. *Albino*, 747 F.3d at 1172. The ultimate burden of proof,

6   however, remains with defendant, and the evidence must be viewed in the light most favorable to

7   plaintiff. *Williams*, 775 F.3d at 1191.

8                       **2. Facts Related to Grievances**

9        According to the LCC grievance coordinator (Hutchinson) and a DOC clerical worker

10   (McKinney) and attachments to their declarations, on August 13, 2019, plaintiff wrote an initial

11   grievance related to the overflow. *See* Dkt. 68, at 3; Dkt. 68-1, at 2. In this grievance, plaintiff

12   recounted his version of events about the toilet overflow, specifically stating that due to

13   defendant Coppola's refusal to provide new shoes, plaintiff was being "forced to walk around in

14   soiled shoes." Dkt. 68-1, at 2. Plaintiff stated that he "fear[ed] a hepatitis breakout or worse"

15   and requested "new shoes/civil lawsuit paperwork." Dkt. 68-1, at 2. Staff received the initial

16   grievance on August 16, 2019. Dkt. 68, at 3.

17        On August 30, 2019, a grievance coordinator provided a level I response stating that she

18   had spoken with plaintiff about his complaint two days prior. Dkt. 68-1, at 3. The response

19   informed plaintiff that he "should receive clean shoes soon, if not already." Dkt. 68-1, at 3.

20        On September 30, 2019, plaintiff attempted to appeal the result of his grievance. Dkt. 68,

21   at 4. This appeal was rejected as untimely filed. Dkt. 68, at 4; Dkt. 68-1, at 4. Plaintiff also

22   filed a Level III appeal, which was again rejected as untimely. Dkt. 68, at 4; Dkt. 68-1, at 5.

23

24

1    Plaintiff also initiated another grievance process by filing a separate initial grievance that

2    LCC staff received on October 31, 2019.  Dkt. 68, at 4.  In the October 31 grievance, plaintiff

3    again grieved the overflow but added that he had found out that he had Hepatitis C on October 3,

4    2019.  Dkt. 68-1, at 7.  Plaintiff unsuccessfully appealed his October 31, 2019 grievance to levels

5    II and III.  *See* Dkt. 68, at 4.

6    Plaintiff has submitted a variety of documents related to his grievances in this lawsuit.  In

7    one, he states that on October 22, 2019, defendant Hutchinson told plaintiff that his attempt to

8    appeal his August 16 grievance had been unsuccessful because plaintiff had "won [on his initial

9    grievance] therefor[e] there is no requirement to advance."  Dkt. 12, at 1.  Plaintiff says that he

10    "knew [he] had won the initial grievance" but that he had attempted to appeal on September 30,

11    2019, when he learned that he had tested positive for Hepatitis C.  Dkt. 12, at 1.  Plaintiff makes

12    these statements under penalty of perjury.  Dkt. 12, at 2.

13    ### 3. Analysis

14    Following the framework set forth by the Ninth Circuit, the Court begins by analyzing

15    whether defendants have met their burden to show that plaintiff failed to exhaust available

16    administrative remedies.  *See Williams*, 775 F.3d at 1191.  Here, the Court finds that defendants

17    have failed to meet their initial burden to show that plaintiff did not exhaust available remedies.

18    There is no dispute that plaintiff was told that he would be given the relief he requested—

19    new shoes—in the level I response to his August 16 grievance.  *See* Dkt. 12, at 1; Dkt. 63, at 9.

20    Nor is there a dispute that plaintiff received the level I response before initiating this matter.  *See*

21    Dkt. 63, at 9 ("[Plaintiff] had only received a Level I decision just days prior. . . .:); *see also* Dkt.

22    19, at 1; *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) (requiring

23    dismissal without prejudice if a prisoner exhausts his remedies only after filing suit).  Viewing

24

1    the facts in the light most favorable to plaintiff—as the Court must—his statement that he

2    believed he could not appeal his level I grievance because it was favorable should be taken as

3    true.  The Court should also take as true plaintiff's claim that after the fact, defendant Hutchinson

4    told plaintiff that he could not appeal a successful grievance.

5        In the Ninth Circuit, if a plaintiff receives a grievance result that is satisfactory to him,

6    there is no obligation to proceed further and the claims are exhausted.  *See Harvey v. Jordan*, 605

7    F.3d 681, 685 (9th Cir. 2010).  Here, plaintiff was told he would receive what he asked for—new

8    shoes—and thus, according to his own statement, did not appeal his level I response at that time.

9    Instead, he filed suit.  Viewed in the light most favorable to plaintiff, plaintiff exhausted his

10   claims before filing the lawsuit on September 3, 2019.

11       Defendants argue that because plaintiff later attempted to appeal the level I response to

12   his August 16 grievance, he did not exhaust his claims.  Dkt. 63, at 10.  They do not discuss the

13   law regarding successful grievances; instead, they rely on the rule that exhaustion during the

14   course of a lawsuit is inadequate.  Dkt. 63, at 10.  But "[a]n inmate has no obligation to appeal

15   from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative

16   remedies."  *Harvey*, 605 F.3d 685.

17       Plaintiff asked for new shoes and was told he would receive them.  He was not required

18   to do more to exhaust his claims before filing this matter.  Neither the subsequent development

19   of learning that he had been exposed to hepatitis nor plaintiff's later use of the grievance process

20   after initiating this lawsuit "unexhaust" plaintiff's claims.  *Accord Harvey*, 605 F.3d 685. ("That

21   [plaintiff] initially requested alternative forms of relief does not change our analysis. Once the

22   prison officials purported to grant relief with which he was satisfied, his exhaustion obligation

23   ended.").  The issue that forms the basis of this lawsuit was raised—and addressed—in the level

24

I response.  Indeed, defendant acknowledges as much, arguing that "[f]or the purpose of this case, this [the claim in the October 31 grievance] is essentially the same allegation stated in [the August 16 grievance], as [plaintiff's] claim about Hepatitis C is merely an alleged consequence of failure to provide shoes."  Dkt. 63, at 11.

The undersigned finds that because plaintiff received a then-satisfactory response to his August 16 grievance, defendants have failed to show that plaintiff did not exhaust his claims. Summary judgment dismissal on the basis of exhaustion is therefore not appropriate, and the undersigned will proceed to the merits of defendants' arguments.

It should also be noted that plaintiff attempted to appeal the outcome of his first grievance, alleging the additional claimed consequence of contracting Hepatitis C as a result of the same incident and was told that he could not do so because it was untimely.  Dkt. 68-1, at 4. This catch-22 left plaintiff without a remedy.  Since he "won" the initial grievance and was given new shoes, he did not need to appeal.  But when he allegedly suffered additional consequences, he attempted to appeal his grievance but was told that it was too late.  This administrative sleight of hand should not now prevent him from moving forward with his claim.

### B.  Deliberate Indifference

Defendants assert that plaintiff has failed to show that any defendant was deliberately indifferent to him.  *See* Dkt. 63, at 12.

### 1.  Legal Standard

"To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002)).  "First, there must be a demonstration that the prison official deprived the prisoner of the 'minimal civilized measure of

1    life's necessities.'" *Id.* (quoting *Hallett*, 296 F.3d at 744). "Second, a prisoner must demonstrate

2    that the prison official 'acted with deliberate indifference in doing so.'" *Id.* (quoting *Hallett*, 296

3    F.3d at 744).

4        "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows

5    of and disregards an excessive risk to inmate health and safety.'" *Id.* (quoting *Gibson v. County*

6    *of Washoe, Nevada,* 290 F.3d 1175, 1187 (9th Cir. 2002)). "Under this standard, the prison

7    official must not only 'be aware of facts from which the inference could be drawn that a

8    substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.*

9    (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

10                              **2. Defendant Cappola**

11        Defendants assert that there is no evidence that plaintiff ever requested shoes from

12    defendant Coppola. Dkt. 63, at 12. They assert that plaintiff's version of events is not credible

13    because it is implausible if defendant Coppola's account is accepted as true. Dkt. 63, at 13.

14        But this argument flips the standard for evaluating a summary judgment motion. The

15    Court takes plaintiff's evidence—not defendant Coppola's—as true in evaluating the motion.

16    Here, plaintiff has stated that he witnessed his toilet overflow, sending human waste onto his

17    cell's floor. *See* Dkt. 9, at 4. He also states that he requested shoes from defendant Coppola

18    shortly after the overflow and that defendant Coppola told him to "check back" in two days.

19    Dkt. 9, at 7. And plaintiff states that when he renewed his request two days later, defendant

20    Coppola said he did not have access to shoes and that plaintiff should spray cleaner on the cuts

21    under his toes. Dkt. 9, at 8. Plaintiff states that he kept asking and sending kiosk messages to

22    defendant Coppola over the next two weeks "with no results." Dkt. 9, at 8.

23

24

1    Thus, defendant Coppola's denial of these claims simply creates genuine issues of

2    material facts. *See* Dkt. 64. It does not merit granting the summary judgment motion.

### 3. Defendant DeLeon

4    Defendant DeLeon asserts that plaintiff asked for shoes and he sent plaintiff to defendant

5    Coppola. Dkt. 65, at 2. Defendant DeLeon claims that he could not have obtained shoes for

6    plaintiff and in response to such a request would only have referred plaintiff to defendant

7    Coppola. Dkt. 65, at 2.

8    For his part, plaintiff does not appear to contradict defendant DeLeon on this point.

9    Plaintiff states that defendant DeLeon told plaintiff that DeLeon could not do anything about

10   plaintiff's shoes on the day of the alleged overflow and directed plaintiff to speak to defendant

11   Cappola. Dkt. 9, at 6. Plaintiff also states that he continued to "constantly" ask defendant

12   DeLeon for new shoes but DeLeon said that it was up to defendant Cappola and ultimately, told

13   plaintiff to "quit asking" DeLeon. Dkt. 9, at 7–8.

14   Even taking plaintiff's statements as true, plaintiff has not come forward with any

15   evidence that defendant DeLeon was in a position to remedy plaintiff's complaint. Because the

16   evidence is undisputed that defendant DeLeon did all that he could in response to plaintiff's

17   request, plaintiff has failed to create a genuine dispute of material fact regarding whether

18   DeLeon was deliberately indifferent to plaintiff's safety. Therefore, the claims against defendant

19   DeLeon should be dismissed with prejudice.

### 4. Defendant Jennings

21   Defendant Jennings claims that he does not recall plaintiff asking for shoes on the date of

22   the overflow. Dkt. 67, at 2. Defendant Jennings states that had plaintiff done so, he would have

1    referred plaintiff to defendant Cappola because Jennings does not have the ability to obtain

2    shoes.  Dkt. 67, at 2.

3         Plaintiff claims that defendant Jennings said that it was "not my . . . problem" when

4    plaintiff requested shoes on the date of the overflow.  Dkt. 9, at 6.  Further, plaintiff states that he

5    repeatedly asked Jennings for shoes with no avail.  Dkt. 9, at 7.

6         Again, even taking plaintiff's statements as true, plaintiff has not come forward with any

7    evidence contesting defendant Jenning's claim that he could not do anything other than refer

8    plaintiff to defendant Cappola.  Because this evidence is undisputed, plaintiff has failed to create

9    a genuine dispute of material fact regarding whether defendant Jennings was deliberately

10   indifferent to plaintiff's safety.  Therefore, the claims against defendant Jennings should be

11   dismissed with prejudice.

12                        **C.  Causation**

13        Defendants acknowledge that plaintiff tested positive for Hepatitis C antibodies on

14   September 30, 2019—approximately a month and a half after the overflow incident—and

15   subsequently tested negative on April 15, 2020.  Dkt. 63, at 14.  However, they argue that it is

16   "impossible" to tell when or how plaintiff contracted the virus.  Dkt. 63, at 14.  Moreover,

17   defendants argue that "it is highly unlikely, if not impossible, that [plaintiff] contracted Hepatitis

18   C" from the overflow and that it is more likely he contracted the virus from "possibl[e] . . .

19   intravenous drug use" or some other source.  Dkt. 63, at 14.  Defendants assert that plaintiff

20   "cannot show that contracting Hepatitis C was a foreseeable consequence of wet shoes."  Dkt.

21   63, at 15.

22   ///

23   ///

24

REPORT AND RECOMMENDATION - 13

1              **1. Legal Standard**

2              To show causation in a § 1983 action, a plaintiff must establish "both causation-in-fact

3    and proximate causation." *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008). "The

4    requisite causal connection may be established when an official sets in motion a series of acts by

5    others which the actor knows or reasonably should know would cause others to inflict

6    constitutional harms." *Preschooler II v. Clark Cty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183

7    (9th Cir. 2007) (quotation omitted). This causation requirement "closely resembles the standard

8    'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d

9    1350, 1355 (9th Cir. 1981). "If 'reasonable persons could differ' over the question of

10   foreseeability, 'summary judgment is inappropriate and the question should be left to the jury.'"

11   *Conn v. City of Reno*, 591 F.3d 1081, 1101 (9th Cir. 2010), *cert. granted, judgment vacated sub*

12   *nom. City of Reno, Nev. v. Conn*, 563 U.S. 915, 131 S. Ct. 1812, 179 L. Ed. 2d 769 (2011), and

13   *opinion reinstated,* 658 F.3d 897 (9th Cir. 2011) (internal citation omitted).

14             Where, as here, a § 1983 action includes a claim for deliberate indifference, the

15   proximate cause and deliberate indifference inquiries overlap. *See Coronado v. Cty. of Madera*,

16   No. CV-F-03-5874 LJO, 2006 WL 908625, at *4 (E.D. Cal. Apr. 7, 2006) (citing *Gibson v. Cty.*

17   *of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002), *overruled on other grounds by Castro v.*

18   *Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)). The deliberate indifference inquiry itself

19   contains a heightened foreseeability requirement: "deliberate indifference requires the defendant

20   to be *subjectively* aware that *serious* harm is likely to result" from failure to take action. *Gibson*,

21   290 F.3d at 1193.

22   ///

23   ///

24

1                                        **2. Discussion**

2          Defendants first argue that it is impossible to tell how plaintiff contracted Hepatitis C, but

3    since it is (purportedly) unlikely that plaintiff contracted it from the toilet overflow, his claim

4    should be denied.  But defendants' argument again relies on disputed material facts.  For

5    instance, defendants argue that "[f]rom all accounts, the water that came from [plaintiff's] toilet

6    was water from [plaintiff's] own toilet" that was uncontaminated.  Dkt. 63, at 14.  But from

7    plaintiff's own account, the water that flowed into his cell contained "feces" and "urine."  Dkt. 9,

8    at 5.  No one disputes that plaintiff had a cellmate (*e.g.*, Dkt. 67, at 2 ("the inmates in that

9    cell. . . .")), and even if there were no factual disputes that the sewage came only from plaintiff's

10   own toilet, presumably, plaintiff also could have been exposed to his cellmate's waste, based on

11   the evidence presented.  As noted in *Fruit v. Norris*, "[i]ndeed, it has been judicially observed

12   that . . . a common ailment closely connected to sanitary conditions is infectious hepatitis."  905

13   F.2d 1147, 1151 (8th Cir. 1990) (citing *Finney v. Hutto,* 410 F. Supp. 251, 258 (E.D. Ark.

14   1976)).  This is sufficient at this point to raise factual issues regarding causation.

15         Defendants also rely on a physician's assistant's declaration stating that Hepatitis C

16   infection usually occurs through drug use and that "[i]t is highly unlikely that [plaintiff]

17   cont[r]acted Hepatitis C virus from the toilet overflow."  Dkt. 69, at 4.  That infection is

18   "unlikely" is, of course, not the same as it being "impossible."  Although the physician's

19   assistant states that contracting the virus from a toilet overflow is unlikely, she also states that

20   infection can occur from "sex with an infected person, medical exposure, unregulated tattoos and

21   body piercings, *and other means*."  Dkt. 69, at 2 (emphasis added).  Thus, even defendants' own

22   evidence in support of their summary judgment motion reveals ambiguity about the means of

23   infection.

24

REPORT AND RECOMMENDATION - 15

1    Finally, defendants argue that because the cells are sloped, with their toilets near the cell

2    doors, it was impossible for 2 inches of water to accumulate in plaintiff's cell.  Dkt. 63, at 15.

3    Again, defendants' argument overlooks that plaintiff has stated in his complaint that he

4    personally witnessed 2 inches of water in his cell, which forced him to remove his belongings

5    from the bed, and that this was caused by water "collecting into the corner working its way

6    toward the door because of the cell['s] uneven floors."  Dkt. 9, at 5.  Viewing plaintiff's

7    statement in the light most favorable to him, defendants' argument serves only to create a factual

8    issue.

9    Plaintiff has also presented evidence that plaintiff's claimed injury was foreseeable.  A

10    jury could well find that defendant Cappola was aware of plaintiff's complaint and was

11    deliberately indifferent to the risk that associated with infection because plaintiff claims that he

12    told Cappola that he feared contracting the disease due to open wounds on his feet.  It is also

13    obvious that if plaintiff had open wounds on his feet and was forced to wear sewage-

14    contaminated shoes, he was at risk of being infected by a pathogen.  *See Farmer*, 511 U.S. at 842

15    (". . . a factfinder may conclude that a prison official knew of a substantial risk from the very fact

16    that the risk was obvious."); *see also Fruit*, 905 F.2d at 1150–51 ("[C]ommon sense" suggests . .

17    . that unprotected contact with human waste could cause disease.").  Because viewed in the light

18    most favorable to plaintiff, the evidence could support a finding of deliberate indifference, there

19    is also adequate evidence of foreseeability on summary judgment.  *See Gibson v. Cty. of Washoe,*

20    *Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002) (holding that deliberate indifference subsumes a

21    "heightened foreseeability requirement.").  Reasonable persons can differ over the question of

22    foreseeability based on the evidence presented herein, so that summary judgment should not be

23    granted on this ground.

24

REPORT AND RECOMMENDATION - 16

1    Finally, and notwithstanding the discussion above, the Court notes that whether plaintiff

2    contracted Hepatitis C from exposure to sewage is an issue bearing on the amount of damages—

3    but not necessarily the fact of the constitutional deprivation.  The undersigned is not convinced

4    that plaintiff's claim fails unless he can prove that he contracted Hepatitis C from the overflow

5    incident.  Indeed, courts have held that exposure to unsanitary conditions alone can amount to an

6    Eighth Amendment violation.  *See, e.g.*, *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir.

7    2001) ("Inmate exposure to sewage can constitute a serious risk to inmate health and safety and

8    satisfy the objective component [of the Eighth Amendment inquiry]. . . .  There is no requirement

9    that an inmate suffer serious medical problems before the condition is actionable.").  Here,

10   plaintiff has provided evidence of a lengthy and significant exposure due to being forced to wear

11   sewage-contaminated shoes for two weeks, while he had open sores on his feet.  Under the

12   reasoning of *Shannon*, defendants would not be relieved from liability merely because plaintiff

13   did not contract a disease after being exposed to raw sewage.

14       In short, defendants' arguments in their summary judgment motion regarding causation

15   are not persuasive.

16                          **D.  Qualified Immunity**

17       Defendants argue that they are entitled to qualified immunity.  *See* Dkt. 63, at 15.

18   Because the claims against defendants other than Cappola should be dismissed, the analysis that

19   follows focuses on qualified immunity as it relates to defendant Cappola.

20                          **1.  Legal Principles**

21       The two qualified immunity prongs are whether there was a constitutional violation and

22   whether the right violated was "clearly established" at the time of the alleged violation.  *See*

23   *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019).  A right is clearly

24

1    established if "every reasonable official would have understood that what [the official] is doing

2    violates that right." *Id.* (internal quotation omitted).  This inquiry must be undertaken in light of

3    the specific context of the case and not as a broad general proposition.  *Id.* (internal citation

4    omitted).  The qualified immunity inquiry is objective:  what would a reasonable official have

5    understood the law to be at the time?  *See id.*

6        A defendant may raise the defense of qualified immunity at multiple stages in a

7    proceeding, including in a motion for summary judgment dismissal.  *Behrens v. Pelletier*, 516

8    U.S. 299, 306 (1996).  Where, as here, qualified immunity is raised in a summary judgment

9    motion, the Court inquires whether "the evidence before it (in the light most favorable to

10    plaintiff)" meets the qualified immunity prongs.  *Id.* at 309.  The Supreme Court has observed

11    that "successful pretrial assertions of immunity seem to be a rare occurrence."  *Id.* at 310.

12                                   **2.  Analysis**

13        First, defendants argue that because defendant Cappola "responded immediately to the

14    report of a toilet overflow[] and removed inmates from the situation so that a hazmat team could

15    properly clean the area," qualified immunity shields defendant Cappola from liability.  The Court

16    notes that the facts are in dispute regarding how long plaintiff remained standing in his cell after

17    the water overflowed.  *Compare* Dkt. 67, at 2 (Jennings' statement that plaintiff only spent one

18    or two minutes in the cell), *with* Dkt. 9, at 6 (plaintiff's statement that he remained in the cell for

19    30 minutes before he was allowed out).  Moreover, plaintiff's claim is not that defendant

20    Coppola was deliberately indifferent by leaving him in the cell but by allegedly ignoring

21    plaintiff's request for new shoes.  Whether or not defendant Coppola directed the cell to be

22    cleaned immediately after the overflow is not responsive to plaintiff's claim.

23

24

1    Without citation to legal authority, defendants argue that "a delay in replacing wet shoes

2  does not rise to the level of a constitutional violation, even under the circumstances as described

3  in [plaintiff's] complaint."  Dkt. 63, at 16.  They conclude that plaintiff "cannot provide clearly

4  established law. . . ."  Dkt. 63, at 16.

5    In analyzing this argument, the Court must take as true the facts in the light most

6  favorable to plaintiff, including that he had to wear shoes contaminated by human feces for two

7  weeks because defendant Cappola refused to take action.  Contrary to defendants' argument,

8  there is a wealth of authority that even shorter periods of direct exposure to sewage violate the

9  Eighth Amendment.  *See, e.g.*, *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001) (stating in

10  the context of a 36-hour incident in which cells were flooded with toilet water that "[i]n viewing

11  the great weight of cases set out [herein] condemning on constitutional grounds an inmate's

12  exposure to human waste, a reasonable prison official would have known at the time that it was

13  improper to expose prisoners to such unsanitary, offensive conditions."); *Buckley v. Alameida*,

14  No. 1:04-CV-05688-OWW, 2011 WL 7139570, at *23 (E.D. Cal. Dec. 20, 2011) ("Enduring a

15  feces covered cell for three days is grave enough to form the basis of a viable Eighth

16  Amendment claim."), *report and recommendation adopted*, No. 1:04-CV-05688-LJO, 2012 WL

17  368280 (E.D. Cal. Feb. 1, 2012); *see also McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir.

18  2001) ("Not surprisingly, human waste has been considered particularly offensive so that "courts

19  have been especially cautious about condoning conditions that include an inmate's proximity to

20  [it].").

21    For example, in an unpublished decision from 2018, where a plaintiff was directly

22  exposure to sewage for hours, the Ninth Circuit explained—

23    The Supreme Court "does not require a case directly on point," *Kisela v. Hughes*,
      ––– U.S. –––, 138 S.Ct. 1148, 1152 (2018) (per curiam), and officials can have

24

1

2

3

4

5

> "notice that their conduct violates established law even in novel factual circumstances," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). We have never squarely confronted a case with facts precisely like these, but we made it clear decades ago that the Eighth Amendment prohibits depriving inmates of "basic elements of hygiene" by making them endure prolonged exposure to "unsanitary conditions such as standing water" and "flooded toilets." *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985). Having to spend hours wading through water filled with human waste—while wearing open-toed sandals—constitutes a severe, and thus unconstitutional, "lack of sanitation." *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).

6

*Weathers v. Loumakis*, 742 F. App'x 332, 333–34 (9th Cir. 2018).

7

8

9

Although the Court is not aware of authority addressing sewage-soaked shoes, the authority cited herein would place a reasonable official on notice that regardless of the means—whether shoes or a cell floor—prolonged contact with sewage violates the Eighth Amendment.

10

11

Defendants fail to show that qualified immunity should apply to bar the claims for damages against defendant Cappalo.

12

**III. Appointment of Counsel**

13

14

15

16

17

The Court recommends that the District Court appoint *pro bono* counsel to represent plaintiff. Although the undersigned previously denied plaintiff's motion for appointment of counsel, the denial was without prejudice to plaintiff's ability to renew his request if circumstances were appropriate. *See* Dkt. 27. Circumstances have changed and now weigh in favor of the appointment of *pro bono* counsel.

18

19

20

21

22

Appointment of counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1) requires "exceptional circumstances." *See Rand v. Roland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (citing former 28 U.S.C. § 1915(d) (1996)), *overruled on other grounds*, 154 F.3d 952 (1998). To decide whether exceptional circumstances exist, the Court must evaluate "both 'the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of

23

24

1   the complexity of the legal issues involved.'" *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th

2   Cir. 1986) (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)).

3           Here, although plaintiff previously was able to litigate his case adequately, he no longer

4   appears to be able to do so.  As noted, plaintiff did not respond to the summary judgment motion.

5   Moreover, he has recently filed a letter saying that not only does he lack law library access, he

6   has "absolut[e]ly no access to any legal books" and does not understand how to proceed in this

7   matter.  Dkt. 71, at 1.  Plaintiff states in his letter that without counsel he cannot litigate this

8   matter.  Dkt. 71, at 1.  Although the law underlying plaintiff's claims is relatively simple, the

9   Court notes that the facts involve evaluation of medical evidence, causation, and proximate cause

10  —all of which is somewhat complex.  Moreover, if the District Court agrees that the case should

11  survive the summary judgment motion, then plaintiff has shown at least some likelihood of

12  success on the merits and the matter would likely proceed to trial.

13          Thus, if the District Court adopts the Report and Recommendation, it should appoint pro

14  bono counsel.

## CONCLUSION

16          The undersigned recommends that defendants' motion for summary judgment (Dkt. 63)

17  be granted in part.  Claims against defendants Jennings and DeLeon should be dismissed with

18  prejudice.  Claims against defendant Cappola should survive.  The Court should appoint *pro*

19  *bono* counsel to represent plaintiff.

20          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

21  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

22  6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

23  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

24

1    of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

2    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

3    imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **October 23,**

4    **2020,** as noted in the caption.

5          Dated this 1st day of October, 2020.

6

7

8

9    J. Richard Creatura
     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 22